# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAIL NICOLE HALL, on behalf of minor J.C., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL[1], <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:16-cv-1167 - JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF GAIL NICOLE HALL AND AGAINST DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY |

Gail Nicole Hall, guardian ad litem for J.C., asserts that her son J.C. is entitled to benefits under the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the record and seeks judicial review of the ALJ's administrative decision. Because the ALJ erred in rejecting the testimony of Ms. Hall, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **PROCEDURAL HISTORY**

In March 2012, an application for benefits was filed on behalf of J.C., alleging disability beginning July 8, 2002. (Doc. 14-7 at 3) The Social Security Administration determined J.C. was not disabled and denied the application at the initial level and upon reconsideration. (*Id.*) After requesting

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, as the defendant in this action.

a hearing, Ms. Hall and J.C. appeared before an ALJ on September 11, 2014. (*See id.* at 12, 33) The ALJ determined J.C. was not disabled as defined by the Social Security Act, and issued an order denying benefits on October 31, 2014. (*Id.* at 12-27) Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied the request on June 2, 2016. (*Id.* at 2-4) Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, a minor claimant must demonstrate he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

///

# **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential three-step process for evaluating a minor claimant's alleged disability. 20 C.F.R. § 416.924(e). The process requires the ALJ to determine whether the child (1) engaged in substantial gainful activity and (2) has a severe impairments or combination of impairments (3) that met or equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ must evaluate how the child's limitations affect six broad areas of functioning called "domains" to determine whether a child's impairments functionally equal a Listing. *See* 20 C.F.R. § 416.926a. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When "marked" limitations exist in two domains of functioning, or an "extreme" limitation exists in one domain, the minor claimant meets the Listing requirements. 20 C.F.R. § 416.926a(a).

**A.    Medical Assessments[2]**

On August 14, 2012, Dr. Steven Swanson administered a psychological assessment of J.C., who at the time was 10 years and one month old. (Doc. 14-8 at 27) Dr. Swanson observed that J.C. "was somewhat sullen and initially somewhat oppositional" during the examination. (*Id.* at 29) He explained J.C. and his mother "disagreed about the facts she presented," and after his mother made comments, J.C. "would sometimes say, 'You're lying.'" (*Id.*)

Dr. Swanson administered the Wechsler Intelligence Scale for Children- 4th Edition (WISC-IV), Wide Range Achievement Test- Revision 4 (WRAT4), Bender Visual-Motor Gestalt Test- 2nd Edition, and Vineland Adaptive Behavior Scales- 2nd Edition (VABS-II). (Doc. 14-8 at 28) With the WISC-IV, Dr. Swanson determined J.C. had a full scale I.Q. of 73, which J.C. had borderline intellectual functioning and could "be expected to perform academically at a level that is considerably lower than same-aged peers." (*Id.* at 30) Dr. Swanson found Plaintiff did "as good or better than would be expected based upon age and level of intelligence" with the Bender-Gestalt II test, which

---

[2] The Court has reviewed the entirety of the record, including both school and medical records. The Court's summary of the medical assessment is intended only to provide a context for the impairments addressed by the ALJ.

required J.C. to copy patterns from cards onto a piece of paper. (*Id.* at 31) On the VABS-II, J.C. had an adaptive behavior composite score of 77, which indicated that "[h]is level of personal and social adaptability and sufficiency [was] as would be expected based upon [his] level of cognitive functioning." (*Id.* at 32) Though J.C.'s intelligence was "in the Borderline range," Dr. Swanson found "no indication of [a] learning disability, as [his] academic functioning [was] as good or better than would be expected based upon level of intelligence." (*Id.* at 32)

Dr. Swanson concluded J.C. had "the ability to understand and respond to increasingly complex requests, instructions, or questions in an age-appropriate manner." (Doc. 14-8 at 33) He opined J.C. could "communicate by understanding, initiating, and using language in an age-appropriate manner." (*Id.*) Further, Dr. Swanson found "no evidence of any deficit in [the] ability to engage in age-appropriate physical activities," and J.C. could "socially integrate with peers and adults in a mostly age-appropriate fashion." (*Id.*) Dr. Swanson believed J.C. had "the ability to engage in and sustain an activity at a pace that [was] mostly appropriate for his age." (*Id.*)

In May 2014, Bau Kay Xiong, MFT Intern, conducted a Children's Mental Health Assessment for Fresno County Mental Health. (Doc. 14-10 at 6- 10) Ms. Xiong noted that she met with J.C., who "was tearful and stated that his mother 'doesn't hug, kiss or play with him.'" (*Id.* at 7) J.C. also described "feeling alone, angry, and resentful that he [was] 'always the one blamed for everything.'" (*Id.*) Ms. Xiong also observed J.C. was "upset[]… that he can't do well in school, 'no one pays attention' to him for 'the good things,' and he [was] 'mad all the time.'" (*Id.*) Ms. Xiong observed that J.C. "appeared irritable, withdrawn but became more engaging and cooperative when [his] mother was asked to leave the room." (*Id.* at 8) Ms. Xiong also noted:

> [J.C.] has a history of hyperactive, inattentive, restless and disruptive behaviors. He cannot remain seated without getting out of his seat without permission, being easily distracted, and needs constant reminder to stay on task. He has been suspended several times for getting out of his seat, refusing to comply to directives, back talking, using foul language and not completing his assignments. His hyperactive behaviors are observed at both school and home, on a daily basis for several years. His mother reported he exhibits a "negative attitude at home, throwing temper tantrums (screaming, yelling, using profanity, being aggressive to his siblings and neighbors, and being tearful) every day." He can easily become dysregulated, blames others for his behaviors, and reported feeling resentful of others (especially his siblings) often. His temper tantrums have worsened within the past year but they have been present for several years.

(*Id.* at 9-10) J.C. was diagnosed with Oppositional Defiant Disorder, Attention-Deficit/ Hyperactivity

4

Disorder, and Mood Disorder. (*Id.* at 10) Ms. Xiong also noted J.C. had problems with his "primary support group, educational problems, and "other psychosocial and environ[mental] problems." (*Id.*)

**B.     Administrative Hearing Testimony**

   1.     J.C.'s testimony

J.C. testified he was in seventh grade, and he liked to play football and video games. (Doc. 14-3 at 37-38) He said that while in sixth grade, he got "[a]ll D's" in school because "[i]t was hard to concentrate." (*Id.* at 40) J.C. also stated it was difficult for him to sit still in class. (*Id.*) He reported that during the sixth grade he was suspended for talking back, but he had not been suspended during the current school year. (*Id.* at 41)

He stated he was responsible for some chores at home, such as sweeping and dumping garbage. (Doc. 14-3 at 37-38) J.C. reported he had two brothers and four sisters and sometimes physically fought with his older brother. (*Id.* at 37, 39-40)

   2.     Ms. Hall's testimony

Ms. Hall testified that J.C. "interact[ed] with his siblings with anger every day all day," and fought "with one of his siblings all the time." (Doc. 14-3 at 43) According to Ms. Hall, J.C. got very angry at his thirteen-year-old brother on one occasion and started "hitting him and choking him." (*Id.* at 45) She stated, "Police had to get involved and they took him to Juvenile Hall." (*Id.*) Ms. Hall stated that "Juvenile Hall [was] going to have him in to see a counselor and take anger classes" as part of his probation. (*Id.* at 46)

She said J.C. was "always into things without permission," and she "constantly [had to] tell him stop, don't, don't get into that, get out of there." (Doc. 14-3 at 43) Ms. Hall reported J.C. would "be doing his own little thing" unless she stepped in, which she had to do because otherwise "he'd be all over the place in the house." (*Id.*) Ms. Hall testified that J.C. had "to be reminded every single day" to do his chores. (*Id.*)

According to Ms. Hall, J.C. was "easily distracted" and had "to constantly be reminded" to do his work. (Doc. 14-3 at 44) She reported J.C. did not "always do his work." (*Id.*) Ms. Hall stated: "I tell him to do his work and I tell him, but you can only tell a kid so much. So sometimes he may get it done, sometimes he may not get it done." (*Id.*) Ms. Hall reported J.C. was able to sit and play video

games "if he's alone." (*Id.*)

She stated J.C. "had a couple of incidents" since he started seventh grade a month before, and teachers called to report he was "distracting the class, not doing his work, not… able to sit in his seat." (Doc. 14-3 at 45) In addition, Ms. Hall said teachers informed her that J.C. was "talking back to the teachers and not listening to the teachers." (*Id.*) She reported J.C. received extra services such as one-on-one counseling in elementary school but had not started at his junior high school. (*Id.* at 46)

Ms. Hall testified that J.C. had mood swings, where "anything could just tick him off." (Doc. 14-3 at 48) According to Ms. Hall, one minute J.C. would "be fine … and the next minute he'll turn against you…, and then he's back to normal." (*Id.*) She said that when he was angry, J.C. would "start yelling at the top of his lungs, screaming like someone [was] attacking him… for a good 15 to 20 minutes." (*Id.* at 48-49) He also would "start[] hitting the walls." (*Id.* at 48) Ms. Hall said J.C. was taking Abilify and Clonidine, which helped "calm him down." (*Id.* at 46) She stated that when the medication wore off, J.C. would "get[] more aggressive and stuff like that." (*Id.* at 48)

**C. The ALJ's Findings**

Pursuant to the three-step process, the ALJ found J.C. had not engaged in substantial gainful activity since the application date of March 6, 2012. (Doc. 14-3 at 15) Next, the ALJ determined J.C. had "the following severe impairments: asthma, attention deficit hyperactivity disorder, disruptive behavior, [and] sleep terror disorder (rule out)." *Id.* Further, the ALJ concluded J.C. did not have an impairment, or a combination of impairments, that met or medically equaled a Listing. (*Id.* at 15-16)

Examining the six functional domains set forth in 20 C.F.R. § 416.926, the ALJ determined J.C. had a "less than marked limitation" in the following domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. (Doc. 14-3 at 22-24, 26) The ALJ found J.C. had "no limitation" in moving about and manipulating objects. (*Id.* at 25) Finally, the ALJ determined J.C. had a "marked limitation in health and physical well-being." (*Id.* at 26) Because J.W. did not have an impairment that resulted in "marked" limitations in two domains or "extreme" limitation in one domain, the ALJ concluded J.C. was not disabled as defined by the Social Security Act. (*Id.* at 26-27)

///

# DISCUSSION AND ANALYSIS

Ms. Hall asserts the ALJ erred in rejecting her testimony concerning J.C.'s limitations, including failing to address her testimony concerning Plaintiff's mood swings, aggression, and ability to relate with others. (Doc. 21 at 13-14) On the other hand, Defendant asserts "the ALJ's reasoning was legally sufficient." (Doc. 22 at 4)

## A. Evaluation of a Lay Witness' Statement

The ALJ must consider statements of "non-medical sources" including spouses, parents, and other relatives in determining the severity of a claimant's symptoms. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *see also Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to do work."). As a general rule, "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (emphasis, internal citations omitted). To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of the witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

The parties dispute whether the ALJ met her burden to properly address the statements of Ms. Hall. (*See* Doc. 21 at 13-14; Doc. 22 at 4) The ALJ noted:

> The claimant's mother alleges he is disabled due to ADHD [citation]. She reports that he is hyperactive, cannot sit down, has mood swings, is distractible, impulsive and constantly moving. She notes problems at school, including not doing homework and suspensions. She reported he talks in his sleep [citation].
>
> Ms. Hall testified that the claimant was suspended last year for talking back. She notes he is doing okay in school now, and likes math and science. She reported he is on medications that help him concentrate. She averred that he physically fights with siblings daily. He plays outside with friends. He uses his inhaler. He has to be constantly reminded to do his homework. Ms. Hall reported the claimant had been in juvenile hall for assaulting his brother, and is on 4 years of probation. She noted he still has mood swings and tantrums, and that she cannot take him out in public [citation].
>
> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained below.

(Doc. 14-3 at 17, citations omitted) The ALJ then proceeded to summarize the medical record and school documents in the record. (*See id.* at 17-21)

7

Significantly, the ALJ's finding that "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible…" has been identified by the Ninth Circuit as "boilerplate language." *See Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit determined "this boilerplate language is problematic," and "subverts the way an RFC must be determined relying on credible evidence, including testimony." *Id.* As a result, the Ninth Circuit determined "inclusion of [the] flawed boilerplate language" "does not …add anything to the ALJ's determination." *Id.* Because the ALJ here only included the boilerplate language in addressing the statements of Ms. Hall, her analysis of the lay witness testimony was flawed.

Moreover, an ALJ may not "discredit [] lay testimony" concerning a plaintiff's symptoms simply because it is "not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)). In *Smolen*, the Court noted an ALJ rejected "testimony of [the claimant's] family members because [the claimant's] medical records did not corroborate her fatigue and pain." *Id.*, 80 F.3d at 1289. The Court found a rejection on these grounds was improper because an ALJ has an obligation to "consider the testimony of lay witnesses where the claimant's alleged symptoms are *unsupported* by [the] medical records." *Id.* (citing Social Security Ruling 88-13, 1988 SSR Lexis 14, emphasis in original). Likewise, here, the ALJ purported to reject the statements of Ms. Hall as inconsistent with the medical record, which the ALJ summarized without identifying any specific conflicts. (*See* Doc. 14-3 at 17-21) Thus, the ALJ's evaluation of Ms. Hall's testimony was not proper.

**B.      Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence,
> (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting J.C.'s symptoms identified by Ms. Hall. Because it is not clear whether Plaintiff would be disabled if the information provided by Ms. Hall were adopted, it is appropriate to remand the matter for further proceedings. *See Dodrill*, 12 F.2d at 919 (remanding the matter for the ALJ to "articulate specific findings" for rejecting the testimony of the lay witness). Because the testimony of Ms. Hall is relevant to J.C.'s ability to interact and relate with others, the matter should be remanded for the ALJ to re-evaluate the evidence.

## **CONCLUSION AND ORDER**

The ALJ erred in evaluating the lay witness testimony of Ms. Hall, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510; *Dodrill*, 12 F.2d at 919. Because the Court finds a remand is appropriate on these grounds, it offers no findings on the remaining issue in Plaintiff's opening brief.

Based upon the foregoing, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Gail Nicole Hall, on behalf of minor J.C., and against Defendant, Nancy A. Berryhill, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __March 14, 2018__          __/s/ Jennifer L. Thurston__
                                                             UNITED STATES MAGISTRATE JUDGE